Argued and submitted June 12, 1997, affirmed July 15, 1998

In the Matter of the Complying Status of
R. M. Hardy & Co., alleged NCE.

EMPLOYERS INSURANCE OF WAUSAU,
a Mutual Company,
*Petitioner,*

*v.*

R. M. HARDY & CO.
and Department of Consumer and Business Services,
*Respondents.*

(93-12288; CA A93850 (Control))

In the Matter of the Complying
Status of Al Walker, alleged NCE.

EMPLOYERS INSURANCE OF WAUSAU,
a Mutual Company,
*Petitioner,*

*v.*

Al WALKER
and Department of Consumer and Business Services,
*Respondents.*

(93-12287; CA A94244)
(Cases Consolidated)

963 P2d 97

David O. Horne argued the cause and filed the brief for petitioner.

Alan J. Schmeits argued the cause for respondent R. M. Hardy & Co. With him on the brief was Silven, Schmeits & Vaughn.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Al Walker.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Wausau Insurance (Wausau) seeks judicial review of an order finding that R. M. Hardy and Company (Hardy) was not a noncomplying employer from April 14, 1993, to August 25, 1993, because it was insured by Wausau.[1] We affirm.

In July 1993, Hardy agreed to perform timber felling for an unknown party. Hardy engaged workers and, on July 21, 1993, it began performance on the contract. In August 1993, one of Hardy's subject employees was injured while working. The employee filed a workers' compensation claim, which the Department of Consumer and Business Services (DCBS) investigated.

On September 22, 1993, DCBS issued a proposed order in which it found that Hardy had employed one or more subject workers in Oregon from April 14, 1993, to August 25, 1993, but that, during that period, it had neither qualified as a self-insured employer nor caused a guaranty contract to be filed with DCBS. Accordingly, DCBS recommended that Hardy be declared a noncomplying employer from April 14, 1993, to August 25, 1993, and that the company be fined $1,000.

Hardy requested a hearing to review that order, *see* ORS 656.740(1),[2] arguing that it had not been a noncomplying employer because Wausau had provided it with workers' compensation coverage during that time. Pursuant to ORS 656.740(2), Wausau was joined as a party to the proceeding.[3]

---

[1] Wausau also sought review of a determination that Al Walker was not a noncomplying employer. Our disposition of the claim involving Hardy makes it unnecessary to address the claim involving Walker.

[2] ORS 656.740(1) provides:

"A person may contest a proposed order of the Director of the Department of Consumer and Business Services declaring that person to be a noncomplying employer, or a proposed assessment of civil penalty, by filing with the Department of Consumer and Business Services, within 20 days of receipt of notice thereof, a written request for a hearing. Such a request need not be in any particular form, but shall specify the grounds upon which the person contests the proposed order or assessment. An order by the director under this subsection is prima facie correct and the burden is upon the employer to prove that the order is incorrect."

[3] ORS 656.740(2) provides:

"Where any insurance carrier, including the State Accident Insurance Fund Corporation, is alleged by an employer to have contracted to provide the

Following the hearing, an administrative law judge (ALJ) found that a guaranty contract between Hardy and Wausau had been filed with DCBS on July 16, 1992. By definition, the ALJ concluded, the existence of that guaranty contract meant that Wausau had provided workers' compensation insurance to Hardy until Wausau properly canceled the contract. *See* ORS 656.419(1), (5). In order to cancel the contract properly, Wausau had to provide written notice of the cancellation to both Hardy and the Director of DCBS. *See* ORS 656.427(1).[4] The ALJ found that, while Wausau had notified Hardy that it had canceled the contract, there was no evidence that Wausau had notified the Director of DCBS of the cancellation until, at the earliest, October 19, 1993. Therefore, the ALJ concluded, the guaranty contract filed with DCBS had remained in effect through the relevant period and Hardy had not been a noncomplying employer during that time. The ALJ reversed the proposed order of DCBS. In accordance with ORS 656.740(4)(a), the ALJ's order became an order of the Director of DCBS. Wausau seeks review of that order.

■     An order declaring an employer to be a noncomplying employer is "prima facie correct and the employer has the burden of proving that the order is incorrect." ORS 656.740(1). On review, Wausau argues that the ALJ improperly ignored both the fact that the proposed order was *prima facie* correct and that Hardy had the burden of proving that the order was incorrect. We disagree.

---

employer with workers' compensation coverage for the period in question, the Workers' Compensation Board shall join such insurance carrier as a necessary party to any hearing relating to such employer's alleged noncompliance and shall serve the carrier, at least 30 days prior to such hearing, with notice thereof."

ORS 656.427(1) provides:

"An insurer that issues a guaranty contract or a surety bond to an employer under this chapter may terminate liability on its contract or bond, as the case may be, by giving the employer and the Director of the Department of Consumer and Business Services written notice of termination. A notice of termination shall state the effective date and hour of termination."

[4] The cancellation would have been "effective at 12 midnight not less than 30 days after the date the notice [was] received by the director." *See* ORS 656.427(2)(a).

The proposed order found that, from April 14, 1993, to August 25, 1993, Hardy had been a noncomplying employer because it had not caused a guaranty contract to be filed with DCBS during a time in which it had been employing one or more subject workers in Oregon. At the hearing, Hardy presented evidence that a guaranty contract between it and Wausau had been filed with DCBS and that Wausau had not canceled that contract. Wausau responded with evidence that it had canceled the contract. In making their arguments, both parties focused on whether Wausau had properly notified Hardy of the cancellation, not on whether Wausau had properly notified the Director.

The evidence that Hardy presented directly contradicted the proposed order's conclusion that Hardy was a noncomplying employer because it had not caused a guaranty contract to be filed. Consequently, Hardy did rebut the *prima facie* case that it was a noncomplying employer. As a result, the ALJ could not simply affirm the proposed order. Rather, the ALJ was required to determine, considering all of the evidence in the record, whether Hardy had, in fact, been a noncomplying employer during the relevant time period. Because Hardy had the burden of proof, the ALJ would have been required to affirm the proposed order if the ALJ had concluded that the evidence was in equipoise. If, however, the evidence was not in equipoise, then the burden would play no role in the ALJ's conclusion.

The ALJ found that the evidence was not in equipoise. He found that (1) on July 16, 1992, a guaranty contract between Hardy and Wausau was filed with DCBS; (2) under that contract, Wausau was required to provide workers' compensation insurance for Hardy until it canceled the contract; and (3) there was no evidence that Wausau had provided the Director with written notice that it was canceling its contract with Hardy. Wausau does not dispute those findings. Because Wausau could not cancel the contract without providing written notice of the cancellation to the Director, *see* ORS 656.427(1), the ALJ concluded that the guaranty contract had not been canceled. Accordingly, Hardy had been insured by Wausau during the relevant period, so it had not been a noncomplying employer. Those facts and conclusions led the ALJ to reverse the proposed order. Because the *prima*

*facie* case had been rebutted and the burden of proof was appropriately applied, we conclude that the ALJ did not ignore ORS 656.740(1) in reaching his decision.

■ Nonetheless, Wausau argues that the ALJ's decision must be reversed because, by basing it on a fact that neither party contested, *i.e.*, whether the Director had been properly notified of the cancellation, the ALJ committed a material error affecting the fundamental fairness of the proceeding. *See* ORS 183.484(7). We disagree. The issue at the hearing was whether Hardy had been a noncomplying employer. Wausau was joined in the proceeding precisely because Hardy took the position that it had not been a noncomplying employer due to the fact that Wausau had provided it with coverage during the relevant time period. Wausau took the position that, although it had once insured Hardy, it had canceled that coverage. In short, the critical issue at the hearing was whether Wausau had canceled the guaranty contract. Both parties were aware of that. ORS 656.419(5) provides that "[c]overage of an employer under a guaranty contract continues until canceled or terminated as provided by ORS 656.423 or ORS 656.427." ORS 656.427 provides that a guaranty contract may be canceled "by giving the employer and the Director of [DCBS] written notice of termination." In light of those clear statutory provisions, we cannot say that it was fundamentally unfair for the ALJ to consider whether the Director had received notification of the termination when the ALJ was determining whether Wausau had terminated the guaranty contract.

Because of our resolution of Wausau's first assignment of error, we need not address its other assignments of error.

Affirmed.