Argued and submitted September 17, 2009, reversed and remanded for reconsideration June 16, 2010

SPORTS CLUBS, LLC,
dba Cheetah's,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Employment Division - Tax Section
T70839; A134056

234 P3d 136

Kevin T. Lafky argued the cause for petitioner. On the opening brief was Matthew Mohill. On the reply brief were Kevin T. Lafky and Lafky and Lafky.

Carolyn Alexander, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

In this unemployment insurance tax assessment case, petitioner Sports Clubs, LLC, dba Cheetah's, seeks judicial review of the final order of an administrative law judge (ALJ) that affirmed the notices of tax assessment and additional assessment issued to petitioner by respondent Employment Department (department). The tax assessment against petitioner was for unpaid employment taxes and interest from the fourth quarter of 2003 through the fourth quarter of 2005; the additional assessment was for an amount equal to 50 percent of the unpaid taxes plus interest and was assessed against petitioner because he fraudulently intended to avoid the payment of taxes to the Unemployment Compensation Trust Fund. *See* ORS 657.515(5). The ALJ concluded that (1) the services for remuneration on which the tax assessment was based constitute taxable employment under ORS 657.030 through 657.094; (2) the employment tax assessment is correct; and (3) the additional 50 percent assessment is appropriate. On review, petitioner assigns error to each of those conclusions. We write only to address petitioner's assertion that the ALJ erred in determining that the employment tax assessment is correct and reject without discussion petitioner's remaining assignments of error.[1] For the reasons that follow, we reverse and remand the order for reconsideration.

Petitioner operates an entertainment business. In March 2006, the department sent petitioner the notices of tax assessment and additional assessment that are subject to the order now on review. The notice of tax assessment indicated the total amount of unpaid taxes and interest petitioner owed the department ($16,353.78) and the taxable payroll ($46,440.00), tax rate, tax assessed, and interest attributed to petitioner by the department for each quarter of unpaid taxes. The notice of additional assessment indicated the additional amount petitioner owed to the department ($8,176.63) for fraud under ORS 657.515(5). After receiving the notices

---

[1] Although we reject petitioner's third assignment of error—that a 50 percent assessment for fraud was inappropriate—we note that the amount of that assessment could change on remand.

of tax assessment and additional assessment, petitioner requested a hearing pursuant to ORS 657.681 and ORS 657.683(1) and contended that the assessments were incorrect because petitioner did not employ any employees; rather, petitioner asserted that its workers were independent contractors. Petitioner's request for a hearing was granted.

Before the hearing, the department provided the ALJ and petitioner with copies of the documents it anticipated offering as exhibits at the hearing. Among those documents were the department's estimated consolidated tax reports for petitioner. Those reports indicated that the department had attributed to petitioner six employees for each month of unpaid taxes. The reports were admitted into evidence at the hearing.

At the start of that hearing, the ALJ identified on the record the three issues that were before it: (1) whether the services for remuneration on which the tax assessment was based constituted taxable employment under ORS 657.030 through 657.094; (2) whether the employment tax assessment was correct; and (3) whether petitioner was subject to an additional 50 percent assessment under ORS 657.515(5). The ALJ also noted that the department's assessments were entitled to a presumption that they were correct and the burden was on petitioner to prove that the assessments were incorrect. Specifically, ORS 657.683(4) provides, in relevant part:

"At any hearing held as provided in ORS 657.480, 657.679, 657.681 or 657.682, the determination or assessment of the director or authorized representative [of the department] shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect. Thereafter the administrative law judge shall enter the findings of fact and decision, either affirming, modifying, or setting aside the determination or assessment of the director or authorized representative and in the case of an assessment, the administrative law judge may increase or decrease the amount of the assessment."

Both petitioner and the department participated in the hearing. The ALJ determined that the department would

call its witnesses first.[2] A department tax auditor and two other department employees presented testimony that established the following. In 2005, the department unsuccessfully attempted to audit petitioner. During that attempted audit, the department was informed that petitioner had been acquired by an individual, Parker. In 2006, the two testifying employees had gone to petitioner's business to serve a subpoena on Parker. While waiting for Parker to appear, the employees observed the business. In particular, they observed six people working: two bartenders, a DJ or entertainment attendant who operated the sound system, a security guard at the front door, a ticket sales person at the front door, and an office person in the back who appeared to give instructions to the DJ and at least one of the bartenders. The department employees also observed the business's hours of operation: eight hours per day Sunday through Thursday and 10 hours per day Friday and Saturday, for a total of 60 hours per week. After about an hour and a half, Parker did not appear, and the department employees left.

Based on those observations, the department estimated petitioner's quarterly payroll for each quarter of unpaid employment taxes. The department used hourly wage figures for three employee categories—that of bartender ($8.39 to $9.27 per hour), security guard ($10.10 to $13.83 per hour), and entertainment attendant ($8.48 to $9.68 per hour)—to estimate the average wage for petitioner's employees at $10.00 per hour. The department did not include any managerial categories in its estimate of the employees' average hourly wage. The department then estimated petitioner's quarterly payroll to be $46,440, which was based on six employees each working 60 hours per week at the estimated average wage of $10 per hour for 4.3 weeks per month. That estimated quarterly payroll then served as the basis for the department's tax assessment against petitioner

---

[2] OAR 471-040-0025(3), which applies to contested case hearings before the department, provides:

"The administrative law judge shall conduct and control the hearing. The administrative law judge shall determine the order of the presentation of evidence, administer oaths, examine any witnesses, and may either on the administrative law judge's own or a party's request exclude witnesses from the hearing room. Parties, or their authorized agents, shall have the right to give testimony and to call and examine witnesses."

of $16,353.78, which in turn served as the basis of the additional 50 percent assessment of $8,176.63 due to fraud.

After the department's employees testified, the department called as a witness a former bartender of petitioner, Martinez, who testified regarding the typical number of individuals who worked at petitioner's business during the week. According to Martinez, typically five people worked at the business on Fridays and Saturdays and only three people worked at the business the rest of the week. In addition, Martinez described the respective duties performed by those individuals and indicated that some workers took on managerial roles.

Petitioner then called its sole witness, Parker, who, like Martinez, testified regarding the typical number of workers attributable to the business and their respective duties. According to Parker, typically four people worked at the business on Fridays and Saturdays and only two people worked at the business the rest of the week. Parker denied that there was an on-site manager.

During closing statements, petitioner argued that,

"when we received the exhibits from the tax department, it was impossible to determine exactly how the assessments were calculated. Other than the fact that we saw they were based on six employees, we could not tell what wage was attributed to them.

"* * * I would certainly object to both the fact that six employees were attributed to the club. And that the $10.00 an hour assessment was attributed to each employee."

The department, in contrast, argued that,

"based off the testimony that we've heard here today, now that we know the more than expanded [role] on what we based our tax assessment on, as in some people were taking managerial roles as to direction and control of the work, direction and control of the money, et cetera, we actually feel that our tax assessment is probably low at this point, but it's already in place. And so to dispute the balance, if anything, it should be higher."

Following the hearing, the ALJ issued the final order now on review. The ALJ found that "[t]he quarterly

payroll was calculated as follows: 60 hours per week x 4.3 weeks per month = 258 business hours per month x 6 employees x $10 per hour, per employee = $15,480 total payroll per month x 3 months per quarter = $46,440." The ALJ, however, also found that,

> "[o]n a typical weekend night (Fridays and Saturdays) there were five people working: one bartender, one DJ, an office person/manager, a security guard/bouncer, and a person at the front door who took money. Sometimes a bartender-helper also worked for part of the evening. Another security guard/bouncer worked the parking lot on weekends. On weeknights (Sundays through Thursdays) there were typically only three people working: a bartender, a DJ, and an office person/manager."

(Citations omitted.) Then, in affirming the department's tax assessment as correctly calculated, the ALJ opined:

> "The employer disagrees with how the Department calculated the tax assessment. Specifically, the employer objects to the Department using six employees and attributing a wage of $10 per hour to each. There is evidence that five or six employees worked on Fridays and Saturdays, but only three employees worked on the other days. However, there was also evidence that suggested that some of the employees had more responsible positions than assumed by the Department, for whom a wage higher than $10 per hour would be appropriate. In any case, the employer did not present evidence to support a more accurate tax assessment. Therefore, the employer failed to rebut the presumption that the Employment Department's tax assessment is correct. ORS 657.681; 657.683(4)."

On review, petitioner renews its argument that the tax assessment is incorrectly based on six employees working 60 hours each week at an average wage of $10 per hour. Citing testimony in the record, petitioner argues that the calculation for the assessed tax should be based on four employees working two days a week and two employees working five days a week. We understand petitioner's argument to challenge the ALJ's finding that petitioner failed to present evidence to support a more accurate tax assessment and the

ALJ's conclusion that petitioner failed to rebut the presumption that the department's tax assessment is correct. Petitioner also emphasized at oral argument that the ALJ's affirmance of the department's tax assessment is not supported by substantial evidence because, except for evidence concerning the estimated average hourly wage of $10, there is no other evidence in the record as to the applicable wage figures. In response, the department argues that the ALJ correctly determined that petitioner failed to meet its burden to rebut the department's tax assessment and that substantial evidence and substantial reason support the ALJ's order.

Under ORS 657.684, "[j]udicial review of decisions under ORS 657.683 shall be as provided for review of orders in contested cases in ORS chapter 183[.]" Under ORS chapter 183, we review an order in a contested case for errors of law and substantial evidence. ORS 183.482(8)(a), (c). A finding of fact is supported by substantial evidence "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

In this case, the ALJ made findings of fact that support two separate and alternative analytical paths leading to the ALJ's ultimate conclusion that petitioner "failed to rebut the presumption that the [department's] tax assessment is correct." The first analytical path derives from the ALJ's findings regarding (1) the department's method for calculating petitioner's recurring quarterly payroll, on which the tax assessment was based; (2) the typical number of employees who worked at petitioner's business; and (3) the appropriate wage for employees who held more responsible positions. The second analytical path is based on the ALJ's finding that petitioner failed to "present evidence to support a more accurate tax assessment." As we discuss below, both analytical paths are based on findings of fact that lack substantial evidence.

■ The ALJ found that the department calculated the recurring quarterly payroll on which the tax assessment was based as follows: "60 hours per week x 4.3 weeks per month = 258 business hours per month x 6 employees x $10 per hour, per employee = $15,480 total payroll per month x 3 months per quarter = $46,440." The department's tax auditor testified about that calculation method and each of the

variables used (hours of operation, number of weeks per month, number of employees, and average hourly wage); the ALJ's finding is supported by substantial evidence.

The ALJ then found that "[o]n a typical weekend night (Fridays and Saturdays) there were five people working[.] * * * Sometimes a bartender-helper also worked for part of the evening. * * * On weeknights (Sundays through Thursdays) there were typically only three people working[.]" The ALJ reiterated later that "[t]here is evidence that five or six employees worked on Fridays and Saturdays, but only three employees worked on the other days." Because Martinez testified at the hearing that typically five employees worked Fridays and Saturdays and only three employees worked the rest of the week, substantial evidence supports the ALJ's findings to that effect.

The ALJ, however, went on to find that "there was also evidence that suggested that some of the employees had more responsible positions than assumed by the Department, for whom a wage higher than $10 per hour would be appropriate." Martinez testified at the hearing that some of petitioner's employees took on managerial roles. Thus, the first part of the ALJ's finding—that "some of the employees had more responsible positions than assumed by the Department" —is supported by substantial evidence. However, *no* evidence was presented at the hearing regarding managerial wage figures. Indeed, the only evidence as to employee wage figures that was presented at the hearing was the tax auditor's testimony, in which he described how the department calculated the estimated average wage of the employees to be $10 per hour based on wage figures for the employee categories of bartender, security guard, and entertainment attendant. The ALJ's finding that "a wage higher than $10 per hour would be appropriate" for employees who had more responsible positions is not supported by substantial evidence.

■ That error would normally require reversal and a remand, except that, in this case, the ALJ made an alternative finding of fact that, if supported by substantial evidence, would render that error immaterial. In particular, the ALJ alternatively found that, "[i]n any case, [petitioner] did not

present evidence to support a more accurate tax assessment." As noted above, the department presented testimony that expressed the recurring quarterly payroll, from which the tax assessment was derived, as a calculation based on a set of variables, including the number of employees (six). Petitioner's sole witness, Parker, presented testimony that the typical number of workers was not six, but was actually four workers on Fridays and Saturdays and two workers on the remaining days. Parker's testimony directly contradicted one of the variables used by the department in calculating the recurring quarterly payroll on which the tax assessment was based. Consequently, the *prima facie* correctness of the tax assessment under ORS 657.683(4) was rebutted.[3] Given that

---

[3] The text establishing the rebuttable presumption under ORS 657.683(4) is virtually identical to the text establishing the rebuttable presumption under ORS 656.740(1) in the context of workers' compensation disputes. ORS 657.683(4) provides that "the determination or assessment of the director or authorized representative [of the department] shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect." ORS 656.740(1) similarly provides that "[a]n order by the director under this subsection [declaring a person to be a noncomplying employer] is prima facie correct and the burden is upon the employer to prove that the order is incorrect."

In *Employers Ins. of Wausau v. R. M. Hardy & Co.*, 155 Or App 231, 236, 963 P2d 97 (1998), we described the operative effect of the rebuttable presumption established by ORS 656.740(1). There, the employer had requested a hearing to challenge an order declaring that it was a noncomplying employer because it had not filed a guaranty contract with the Department of Consumer and Business Services. *Id.* at 234. At the hearing, the employer presented evidence that a guaranty contract, in fact, had been filed. *Id.* at 236. We concluded:

"The evidence that [employer] presented directly contradicted the proposed order's conclusion that [employer] was a noncomplying employer because it had not caused a guaranty contract to be filed. Consequently, [employer] did rebut the *prima facie* case that it was a noncomplying employer. As a result, the ALJ could not simply affirm the proposed order. Rather, the ALJ was required to determine, considering all of the evidence in the record, whether [employer] had, in fact, been a noncomplying employer during the relevant time period. Because [employer] had the burden of proof, the ALJ would have been required to affirm the proposed order if the ALJ had concluded that the evidence was in equipoise. If, however, the evidence was not in equipoise, then the burden would play no role in the ALJ's conclusion."

*Id.* at 236.

The rebuttable presumption established by ORS 657.683(4) for assessments operates analogously and has two components: (1) the *prima facie* correctness of the assessment and (2) petitioner's burden of proof to establish that the assessment was incorrect. Thus, at the start of the hearing in this case, the tax assessment was entitled to a presumption of *prima facie* correctness. Because the department presented testimony that expressed the recurring quarterly payroll, on which the tax assessment was based, as a calculation derived from a series of variables, evidence

state of the record, a reasonable person could not find that petitioner "did not present evidence to support a more accurate tax assessment." The ALJ's finding to that effect lacks substantial evidence.

Reversed and remanded for reconsideration.

that contradicted one of those variables was sufficient to rebut the *prima facie* correctness of the assessment.